**THURSTON**

v.

**AMERICAN STEVEDORES, Inc.**

**THE SUPREME.**

**No. A 18173.**

United States District Court
E. D. New York.
Jan. 25, 1954.

Macklin, Brown, Lenahan & Speer, New York City, By: Gerald J. McKernan, New York City, for libelant.

Atkins & Weymar, New York City, By: Horace T. Atkins and Christopher Heckman, New York City, for respondent.

BYERS, District Judge.

Here the owner of the wooden barge Supreme seeks to recover damages claimed to have been sustained by it as the result of improper loading of not less than six hundred tons (according to respondent—the libelant says seven hundred tons plus) of wet sand and loam into the barge from the S.S. Robert Fulton at Pier 80 N.R., Manhattan.

The discharge proceeded on August 27, 28 and 29, 1946. The libel was filed October 25, 1946 and the answer on February 27, 1947.

Why the cause did not proceed to trial until over six years thereafter has not been adequately explained.

The facts are so little in dispute that they invite no discussion beyond a citation to the testimony of the witnesses in connection with the respective findings presently to be stated.

The defense comes down to the contention that the vessel was so old and structurally infirm that she could not withstand the inevitable stresses and strains to which her calling rendered her subject, and hence that the clearly established disregard by the respondent's stevedore of the requirement to distribute this considerable cargo evenly, both fore and aft and athwartship, into the bays of the barge should be ignored.

That argument must be rejected in view of the uncontradicted testimony for the libelant that even a newly built barge improperly loaded as the Supreme was, would have been damaged if the same methods had been employed as are disclosed in this record. The Supreme had served many years as a canal boat carrying wheat and similar cargoes, which explains the absence of bulkheads between the bays of the vessel, which the witnesses called hatches.

Moreover it is uncontradicted that less than a month prior to this occurrence the Supreme had received and carried without sustaining any damage a like cargo of 750 tons which had been properly loaded and discharged. The capacity of this barge to function for such a purpose is more important in the disposition of this cause than the age of the craft and such infirmities as are to be attributed thereto.

The bargee Anderson was a convincing witness by reason of his experience and his manner of testifying; he stated that during the 27th and 28th of August he repeatedly complained to the boss stevedore of overloading in certain bays, piling in the center, and the failure to level off the cargo once it had been placed on his barge, and that only partially corrective measures were adopted; more than once his remonstrances were answered by the foreman stevedore with the statement, "I am loading the boat."

It is true that he was, and it is equally true, in the light of the testimony, that he was functioning improperly, for which reason his employer must be held responsible for the necessary results of his lack of understanding.

### Findings.

1. On August 26, 1946 the libelant, Ernest Thurston, was the owner of the wooden barge Supreme, the dimensions of which were 116 x 29 with 14 foot sides, having a cargo capacity of about 1,000 tons. The barge was built in 1917 and was therefore then twenty-nine years old.

2. The libelant purchased this barge from the New York Port Authority on July 9, 1946 at the New York State Barge Terminal, Columbia Street, Brooklyn, where it had lain idle for a period of not less than two years, and had accumulated storage charges which caused the sale by the New York Port Authority. The purchase price of $450 was sufficient to cancel those charges, but is not indicative of the true value of the vessel.

3. The libelant testified that he had expended about $2,400 in labor and materials in order to put the vessel into

condition for carrying coal and similar cargoes in and around the Port of New York.

4. On August 26, 1946 the barge had been chartered to Hedger or one of the enterprises bearing his name, but the failure of the charterer to return this vessel in the ordinary good condition, etc., did not result in the institution of litigation by Thurston against Hedger.

5. About August 10, 1946 the Supreme carried a 750-ton cargo of sand ballast from a point in New Jersey to Great Kills, Staten Island, where the cargo was discharged, and an inspection at that time showed no damage to the barge from either loading or discharge.

6. On August 26, 1946 the Supreme was towed alongside the steamship Robert Fulton at Pier 80, N.R., Manhattan, to receive a load of not less than 750 tons of wet sand and loam from that ship.

7. The loading proceeded on August 27 and 28 by the use of a dump bucket rigged and controlled from the ship by respondent, American Stevedores, Inc., in charge of the operation.

8. The cargo so discharged from the ship into libelant's barge was not evenly distributed throughout her fore and aft bays, namely, no cargo or very little was placed in either the bow or stern bays; nor was it evenly placed athwartship; the load was heaviest along the center line of the barge and the wet sand was piled so as to cover one or more of the crossbeams in piles or cones, and the cargo space on the floor or deck of the barge at the sides was left almost bare.

That method of loading was sought to be corrected by trimmers on the afternoon of August 28 or the morning of August 29, but they did not level off the cargo as a whole and their efforts were sporadic and insufficient to correct the conditions created by the improper loading.

9. As the result of that improper loading the barge was subjected to unusual and unreasonable structural strain, which caused a sixteen inch sheer amidships which was so occasioned.

The method of loading caused an unusual strain upon the beams which broke, and as a result the bottom sagged, which in turn caused excessive leaking below the waterline since the office of the beams is not to support a load but to hold the bottom of the barge in correct alignment.

*Comment:* The testimony of the witness DeMars called by the libelant is quite convincing as to the nature of the damage occasioned by the improper loading and the effects necessarily resulting from that operation, and is also convincing with respect to the absence of connection between the damage which he described and other unaffected timbers in this barge which were clearly shown to have deteriorated as the result of wear and tear incident to the long years of use to which the vessel had been put prior to this occurrence.

The testimony of libelant's witnesses, Stewart, Ayers, Conely and MacKenzie, and that of the respondent's witnesses, Peroni and Hylind, taken together is thought to vindicate the foregoing Finding.

10. The result of the improper discharge of this cargo from the Fulton into the Supreme caused, among other things, two crossbeams to crack and the hull to sag as stated, which in turn opened seams in the hull of the barge below the waterline and caused extensive leaking, which would not otherwise have taken place.

11. The barge Supreme was towed on August 29, 1946 to Columbia Street, Brooklyn, where the cargo was subsequently leveled at the expense of libelant, and the barge was eventually discharged of her cargo without sinking as the result of this corrective measure.

12. The said barge was towed to the Swenson Shipyard, Jersey City, where a survey was held on September 6, 1946; which is in evidence as Libelant's Exhibit 8.

**812**

Conclusion.

The libelant has sustained his burden of proof that the barge Supreme was strained, stressed and caused to leak and sustained serious damage on August 27, 28 and 29, 1946, by reason of the fault, neglect and want of care on the part of American Stevedores, Inc., in the respects indicated in the foregoing Findings, and is entitled to the usual interlocutory decree, with costs.

Settle decree.